DECISION AND JUDGMENT ENTRY
This is an appeal from a Pickaway County Common Pleas Court judgment. Following a bench trial, the court found in favor of James and Barbara Gilbert, plaintiffs below and appellants herein, with respect to a negligent workmanship claim. The court found in favor of Brad Crosby dba Brad Crosby Contracting, defendant below and appellee herein, with respect to appellants' fraudulent misrepresentation claim.
Appellants raise the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR: "THE TRIAL COURT'S DECISION DENYING APPELLANT'S [sic] FRAUD CLAIM IS UNREASONABLE, ARBITRARY AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 SECOND ASSIGNMENT OF ERROR: "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANTS THE OPPORTUNITY TO PRESENT REBUTTAL EVIDENCE ON OTHER ESTIMATES FOR REPAIR OF DEFECTS TO THE HOME."
 THIRD ASSIGNMENT OF ERROR: "THE TRIAL COURT'S DECISION ON THE EXTENT AND AMOUNT OF DAMAGES ON APPELLANTS' CLAIM FOR NEGLIGENT WORKMANSHIP IS UNREASONABLE, ARBITRARY AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Our review of the record reveals the following facts pertinent to the instant appeal. In the spring of 1993, appellants considered purchasing a new home. Appellants had heard from friends that they should not buy a "Havens home."
Appellants visited a home at 3846 State Route 752 in Ashville, Ohio. Appellee was the general contractor of the home. Appellee purchased the lot upon which the home was built from Michael C. and Ellen F. Havens.
Appellant Barbara Gilbert testified that the first question her husband asked appellee was, "Is this a Havens construction or are you affiliated with Mike Havens at all, and the answer was no." Barbara Gilbert explained that, "My husband was a fanatic that it would not be a Mike Havens house." She stated that if appellee had indicated that the home was a "Havens house," she and her husband would have walked away.
James Gilbert, like his wife, testified that he and his wife sought appellee's assurance that the house they were looking to purchase was not a "Havens home." James Gilbert stated that "the first thing we asked [appellee] was we just want to make sure it was not a Havens home, and * * * he told us that it was not a Havens home and that he wasn't connected with Havens' construction at all."
Appellants ultimately purchased the home, and, after they moved in, defects in the home became apparent. Appellants also learned that Michael Havens had been involved in the very early stages of constructing the home.
On July 24, 1998, appellants filed a complaint against appellee and asserted two causes of action: a negligent workmanship claim and a fraudulent misrepresentation claim. With respect to their negligent workmanship claim, appellants alleged that after they moved into the home they discovered the following problems: (1) moisture in the basement; (2) cracking and chipping of the driveway; (3) ineffective basement window wells; (4) moisture in the crawlspace; (5) leaking windows; (6) non-existent front yard drainage; (7) improper water drainage around the house; and (8) a falling patio fence. Appellants asserted that appellee's faulty workmanship caused the problems.
With respect to their fraudulent misrepresentation claim, appellants alleged that: (1) appellee fraudulently misrepresented that Michael Havens was not involved in the construction of the home; and (2) as a result of appellee's fraudulent misrepresentation, appellants have sustained damages, "as the house has numerous defects directly traceable to its construction."
Following a bench trial, the trial court determined that appellants were entitled to $6,807.36 in damages for their negligent workmanship claim. While the court found in appellants' favor with respect to some of the defects, the court did not find sufficient evidence to demonstrate,inter alia, that a privacy fence needed to be repaired or replaced and that a new roof was required.
The trial court also concluded that appellants failed to prove their fraudulent misrepresentation claim. The court found that statements appellee made concerning Havens' involvement in the construction of the home did not constitute fraud. The court noted that appellants claimed that appellee stated that the home was not a "Havens built" home. In determining that the statement was not fraudulent, the court stated:
 "Assuming this was the representation made by defendant, the Court is of the opinion that such is not false. While Havens worked on the home during initial construction, it is clear that [appellee] took over construction of the home and completed it well in advance of [appellants'] purchase of the home. That being the case, the Court finds that any statement made by [appellee] to [appellants] concerning Havens' involvement in the construction of the house was not a materially false representation with respect to the purchase contract."
Assuming, arguendo, that appellee's statement was false, the court noted that appellants failed to present sufficient evidence that the alleged misrepresentation caused damage. The court noted that appellants paid $114,000 for the home and that its current appraised value is $123,000. Thus, the court concluded that appellants have not sustained any damage.
Appellants filed a timely notice of appeal.
 I
Because appellants' first and third assignments of error both concern the weight of the evidence, we consider the assignments of error together.
In their first assignment of error, appellants argue that the trial court erred by finding that they failed to establish their fraud claim. Appellants assert that the trial court's decision was "unreasonable, arbitrary and against the manifest weight of the evidence." Appellants argue that contrary to the trial court's finding, appellee's statement that the home they purchased was not a "Havens home" was false. Appellants note that they testified that they would not have purchased the home had they known it was a "Havens home." With respect to the damages, appellants argue that the trial court construed the benefit of the bargain rule too narrowly, focusing solely on the diminution in value. Appellants assert that the cost of repair or replacement is also an appropriate measure for damage awards in fraud cases.
In their third assignment of error, appellants argue that the trial court erred in determining the amount of monetary damages to which appellants were entitled for their negligent workmanship claim. Appellants argue that the trial court ignored evidence regarding the privacy fence, the front yard drainage, and the roof.
Initially, we note that a reviewing court will not reverse a trial court's decision as being against the manifest weight of the evidence if competent, credible evidence supports the trial court's judgment. SeeVogel v. Wells (1991), 57 Ohio St.3d 91, 566 N.E.2d 154; Ross v. Ross
(1980), 64 Ohio St.2d 203, 414 N.E.2d 426; C.E. Morris v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. In determining whether a trial court's judgment is against the manifest weight of the evidence, a reviewing court must not re-weigh the evidence. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273, 1276. An appellate court should not substitute its judgment for that of the trial court when competent, credible evidence going to all of the essential elements of the case exists. As the court stated in SeasonsCoal, 10 Ohio St.3d at 80, 461 N.E.2d at 1276:
 "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
In order to establish a cause of action for fraudulent misrepresentation, the plaintiff must prove: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. Burr v. Stark Cty. Bd. of Commrs. (1986),23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus.
In the case at bar, we agree with the trial court's conclusion that appellants failed to establish that appellee fraudulently misrepresented that the home was not a "Havens home." First, competent and credible evidence exists in the record to support the trial court's finding that Appellee's statement was not false. Appellee testified that he took over the building of the home after Havens began the framing. From that point of the construction's process, Havens was not involved. Appellee stated that he did not consider the home a "Havens home," but rather a "Crosby home." Simply because Havens may have been involved in the initial stage of the construction does not mean that the home was a "Havens home." We further note that appellants' inquiry did not explicitly seek information as to whether Michael Havens participated in any manner in the house construction.
Second, assuming, arguendo, that all other elements are met, no evidence exists that appellee's misrepresentation proximately caused appellants' injury. Appellants complained of various defects in the home. The only evidence in the record, however, is that the complained of defects were proximately caused by appellee's negligent workmanship. No evidence exists that any of the complained of defects proximately resulted from the home being a "Havens home."
Third, while we agree with appellants that damages in a fraudulent misrepresentation case may include the cost of repair and are not limited to the benefit of the bargain,[2] as we noted above, appellants have failed to demonstrate that their damages proximately resulted from appellee's alleged fraudulent misrepresentation. Consequently, the trial court did not err by failing to find in appellants' favor with respect to their fraudulent misrepresentation claim.
We also find no error with the trial court's decision denying appellants' claim for damages with respect to the fence, the roof, and the front yard. The trial court heard the evidence regarding appellants' claim for damages and determined that appellants had not sufficiently established, by a preponderance of the evidence, that they were entitled to damages for the roof or for the fence. The trial court specifically found that appellants, through their failure to maintain the fence, caused the damage to the fence. Competent, credible evidence supports the trial court's decision, and it is not this court's duty or inclination, under a manifest weight of the evidence examination, to second-guess the trial court's decision.
Moreover, we emphasize that the amount of damages to which appellants were entitled for the front yard is a matter committed to the trial court's sound discretion. Appellants argue that the trial court erred by awarding only $1250 when, according to appellants' expert, the amount needed to fix the yard was $2500. Appellants contend that because appellee did not successfully rebut the amount, the trial court was obligated to find that the amount of damages to which appellants were entitled was $2500.
An appellate court will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion. Roberts v.U.S. Fid. Guar. Co. (1996), 75 Ohio St.3d 630, 665 N.E.2d 664, citingBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. An abuse of discretion implies that the trial court acted in an unreasonable, arbitrary or unconscionable manner. See, generally, Rigbyv. Lake Cty. (1991), 58 Ohio St.3d 269, 569 N.E.2d 1056. Furthermore, the abuse of discretion standard of review does not permit us to substitute our judgment for that of the trial court. Moreover, as long as competent, credible evidence supports the trier of fact's decision, the judgment is supported by the manifest weight of the evidence. See C.E.Morris v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.
In Keeton v. Hinkle (Mar. 10, 2000), Morrow App. No. 871, unreported, the appellants, similar to appellants in the case at bar, argued that the trial court erroneously reduced the amount of damages as testified to by appellants' expert, when no contrary evidence existed. The appellate court rejected the appellants' argument, stating:
 "In determining damages, in addition to reviewing the report submitted by appellants' expert, the trial court also had to assess the credibility of the expert witness. It is possible, in awarding an amount of compensatory damages less than requested by appellants, that the trial court found appellants' claimed damages to be speculative and not supported by the evidence. As an appellate court, `our role in assessing credibility is very limited because we do not have the same opportunity that the trier of fact has in being able to see the witnesses testify and their demeanor while they testified. Instead, we have only the printed words of the record.' Gould v. Pinnacle Properties, Inc. (June 26, 1998), Warren App. No. CA97-11-120, unreported, at 3."
Thus, the court concluded: "The mere fact that appellee did not present evidence [regarding the amount of damages, if any,] * * * does not mean that appellants are automatically entitled to the amount of requested damages."
Similarly, in the case at bar the trial court occupied the best position to assess the experts' credibility. The trial court could have determined that the experts' damage estimate was pure speculation or was unreasonable. Consequently, we do not believe that simply because appellee did not present evidence regarding the amount necessary to fix the front yard, the trial court was required to accept appellants' evidence as to the amount of the damage award. The trial court's decision to award appellants $1,250 for the damage to the front yard is not unreasonable, arbitrary, or unconscionable. Furthermore, ample competent, credible evidence supports the trial court's damage award.
Accordingly, based upon the foregoing reasons, we overrule appellants' first and third assignments of error.
 II
In their second assignment of error, appellants argue that the trial court erred by failing to permit appellants to present rebuttal evidence regarding estimates for the repair of defects to the home.
Initially, we note that appellants failed to proffer the evidence. Evid.R. 103(A) provides, in pertinent part, as follows:
 Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
* * *
 (2) * * * [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. * * *
Thus, Evid.R. 103(A)(2) requires an offer of proof in order to preserve any error in excluding evidence, unless the substance of the excluded evidence is apparent in the record. State v. Brooks (1989),44 Ohio St.3d 185, 542 N.E.2d 636. In the case sub judice, appellants failed to proffer evidence, and have waived any purported error in this regard. See Debacker v. Debacker (Feb. 2, 1999), Hocking App. No. 98 CA 5, unreported; State v. Kyle (Dec. 12, 1996), Athens App. No. 96 CA 1729, unreported; Bentivegna v. Sands (July 9, 1991), Athens App. No. 90 CA 1453, unreported.
Assuming, arguendo, appellants had properly proffered the evidence, we would find no error. A trial court enjoys broad discretion in determining whether to admit evidence. See City of Urbana ex rel. Newlin (1989),43 Ohio St.3d 109, 113, 539 N.E.2d 140, 144. Accordingly, absent an abuse of discretion, an appellate court may not reverse the trial court's decision. See Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269,569 N.E.2d 1056. An abuse of discretion connotes more than an error of law or judgment. As the court stated in Huffman v. Hair Surgeon, Inc.
(1985), 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252:
 "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an `abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."
Thus, an abuse of discretion will not be found when the reviewing court simply could maintain a different opinion were it deciding the issue de novo. Rather, to find an abuse of discretion, the reviewing court must determine that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. AAAA Enterprises, Inc. v. River Place CommunityRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601.
In the case sub judice, a review of the transcript reveals that the trial court refused to permit appellants to present the rebuttal evidence because the evidence constituted inadmissible hearsay. See Evid.R. 802. Thus, we conclude that the trial court did not abuse its discretion by refusing to admit the rebuttal evidence.
Accordingly, based upon the foregoing reasons we overrule appellants' second assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed. Appellee shall recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. Evans, J.: Concur in Judgment Opinion.
 ______________________ Peter B. Abele, Presiding Judge
[2] The "benefit of the bargain" measure of damages has been described as follows:
 "Where there is fraud inducing the purchase or exchange of real estate, Ohio courts have held that the proper measure of damages is the difference between the value of the property as it was represented to be and its actual value at the time of purchase or exchange. This is known as the `benefit-of-the-bargain' rule."
Molnar v. Beriswell (1930), 122 Ohio St. 348, 171 N.E. 593, paragraph one of the syllabus; Brewer v. Brothers (1992), 82 Ohio App.3d 148,611 N.E.2d 292. Under the benefit of the bargain rule, the cost of repair or replacement is a fair representation of damages and an adequate measure of damages. Noble v. Mandalin (1995), 104 Ohio App.3d 11,660 N.E.2d 1231; Brewer v. Brothers (1992), 82 Ohio App.3d 148,611 N.E.2d 492.