[Cite as *United Bank, Div. of the Park Natl. Bank v. Expressway Auto Parts, Ltd.*, 2015-Ohio-4554.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| UNITED BANK, DIVISION OF THE PARK NATIONAL BANK | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J. |
| Plaintiff-Appellant | Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 15CA51 |
| EXPRESSWAY AUTO PARTS, LTD., ET AL. | O P I N I O N |
| Defendants-Appellees | |

CHARACTER OF PROCEEDING:     Appeal from the Richland County Court of Common Pleas, Case No. 14-CV-0547

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     November 2, 2015

APPEARANCES:

For Plaintiff-Appellant -
United Bank

SUSAN M. ARGO
ANTHONY R. ROBERTSON
NATHAN L. SWEHLA
Graydon Head & Ritchey LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202-3157

For Defendant-
Expressway Auto Parts, Ltd.

NEIL A. MCKOWN
McKown & McKown Company, LPA
10 Mansfield Avenue
Shelby, Ohio 44875

For Defendant-Appellee -
For Sutton Bank

MICHAEL D. STULTZ
KARL C. KERSCHNER
CHRISTOPHER C. CAMBONI
Meyer & Kerschner, Ltd.
106 East Market Street; P.O. Box 400
Tiffan, Ohio 44883

For Defendant-Appellee-
Michael W. Moyer

ROBERT A. FRANCO
Law Office of Robert A. Franco
1007 Lexington Avenue
Mansfield, Ohio 44907

*Hoffman, P.J.*

{¶1}   Plaintiff-appellant United Bank, Division of the Park National Bank ("United Bank"), appeals the April 3, 2015 Order entered by the Richland County Court of Common Pleas, which granted summary judgment in favor of defendant-appellee Sutton Bank.   United Bank also appeals the trial court's May 19, 2015 Bench Trial Decision which found in favor of defendant-appellee Michael W. Moyer as well as defendant Expressway Auto Parts, Ltd. on United Bank's claims.

STATEMENT OF THE FACTS AND CASE

{¶2}   In 2004, following the death of his former business partner, Mark Heibertshausen, Moyer arranged to purchase 862 wrecked vehicles from Westfield Insurance Company.  These vehicles were housed on the lot of T & M Expressway Auto Parts, a salvage auto parts business owned and operated by Heibertshausen.  T & M Expressway had a contract with Westfield Insurance to purchase the wrecked vehicles after Westfield settled the insurance claims with the vehicle owners.  At the time of Heibertsthausen's death, T & M Expressway had not yet paid Westfield for the 862 vehicles.  Moyer secured a loan from Civista Bank, FKA Citizen's Bank and Farmer's Bank("the Civista Loan"), to purchase the vehicles.  Thereafter, Moyer hired workers to disassemble the wrecked vehicles to create an inventory of salvage parts, and began his own salvaged auto parts business.  Moyer sold as scrap any parts not suitable for inventory.

{¶3}   At this time, Moyer personally owned real estate at 954 East Main Street, and 222 North Pierce Street in Crestline, Ohio.  Civista Bank held a mortgage on these properties ("the Civista Mortgage"), which Moyer had originally assumed from

Heibertshausen on May 27, 2004. The balance on the Civista Mortgage was $334,961, as of June 24, 2004. On July 29, 2004, Moyer entered into a land installment contract to sell the two properties to Songer Investments, which was owned by Matthew Songer, for the amount of the mortgage debt. Instead of making payments directly to Moyer, Songer made the land contract payments directly to Civista Bank, crediting the Civista Mortgage.

{¶4} Songer decided to purchase the salvage auto parts business from Moyer. On June 28, 2006, Songer formed a limited liability company, Expressway Auto Parts, Ltd., to operate the business. The LLC operating agreement named Songer's wife, Angela Songer, and his mother, Arlene Songer, as the co-owners and only members of the LLC. The operating agreement further denoted Songer and his father, Herbert Songer, as co-general managers. Moyer gave Expressway the inventory from the Westfield vehicles, and Expressway made payments on the Civista Loan. Moyer was involved in the business affairs of Expressway throughout the company's existence. Moyer, however, was not paid a fixed regular compensation although it appears Expressway paid Moyer $544,000, over 2011, 2013, and 2014.

{¶5} On December 19, 2006, Moyer executed a $630,000 promissory note payable to Sutton Bank. The Note identified Moyer and Expressway as co-borrowers. Moyer also signed a security agreement pledging Expressway's inventory and equipment, and a 1998 motor vehicle, as collateral for the Note. Moyer signed the security agreement personally and on behalf of Expressway, and identified himself as a member of the company. Sutton Bank filed a financing statement with the Ohio Secretary of State on May 7, 2007. Civista Bank received $290,727.26, from the

proceeds of the Sutton Bank Loan, as payment on the Civista Loan. Expressway made the monthly payments on the Sutton Bank Loan over the next eight years. Expressway's tax returns for tax years 2006-2010, listed the Sutton Bank Loan as a corporate liability.

**{¶6}** On September 6, 2007, United Bank loaned Expressway $100,000, taking a security interest in Expressway's inventory as collateral for the loan. United Bank filed a financing statement with the Ohio Secretary of State on November 7, 2007. Expressway made the monthly payments on that loan.

**{¶7}** On December 1, 2009, Angela Songer and Arlene Songer executed an Amendment to Operating Agreement, which removed Arlene Songer as a member, leaving Angela Songer as the sole member. The Amendment also removed Herbert Songer as the co-general manager, leaving Songer as the sole general manager.

**{¶8}** On March 29, 2010, Songer, in his capacity as general manager, executed a promissory note in the amount of $569,447.29, payable to United Bank ("the United Bank Loan"). Songer also executed a security agreement on the same day. Expressway made monthly payments on the United Bank Loan until April, 2014.

**{¶9}** On April 1, 2014, Songer was sent to federal prison for mortgage fraud. Moyer became the acting general manager of Expressway. Moyer stopped making the monthly payments on the United Bank Loan. Following this default, United Bank obtained a cognovits judgment in the amount of $464,000 against Expressway in the Crawford County Court of Common Pleas on May 14, 2014.

**{¶10}** On May 28, 2014, United Bank filed the instant action against Expressway and Sutton Bank. United Bank subsequently amended the complaint to add Moyer as a

defendant.  Sutton Bank filed a motion for summary judgment on March 3, 2015.  Via Order filed April 3, 2015, the trial court granted Sutton Bank's motion for summary judgment, finding Expressway ratified the Sutton Bank Loan and security agreement executed by Moyer, and the Sutton Bank Loan was superior to the United Bank Loan. The trial court conducted a bench trial on United Bank's claims against Moyer and Expressway on April 28, 2015.  Via Bench Trial Decision filed May 19, 2015, the trial court entered judgment in favor of Moyer and Expressway on United Bank's claims.

{¶11} It is from these entries United Bank appeals, raising the following assignments of error:

{¶12} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED DEFENDANT-APPELLEE SUTTON BANK ('SUTTON BANK') SUMMARY JUDGMENT ON PLAINTIFF-APPELLANT UNITED BANK, DIVISION OF THE PARK NATIONAL BANK'S ('UNITED BANK') DECLARATORY JUDGMENT CLAIM.

{¶13} "II. THE TRIAL COURT ERRED WHEN IT GRANTED SUTTON BANK SUMMARY JUDGMENT ON UNITED BANK'S DECLARATORY JUDGMENT CLAIM BECAUSE GENUINE ISSUES OF MATERIAL FACT REMAIN.

{¶14} "III. THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT-APPELLEE MICHAEL W. MOYER ('MOYER') JUDGMENT ON UNITED BANK'S CLAIM FOR CONVERSION.

{¶15} "IV. THE TRIAL COURT ERRED WHEN IT GRANTED MOYER JUDGMENT ON UNITED BANK'S CLAIM FOR FRAUDULENT TRANSFER.

{¶16} "V. THE TRIAL COURT ERRED WHEN IT GRANTED MOYER JUDGMENT ON UNITED BANK'S CLAIM FOR COLLECTION OF PROCEEDS.

{¶17} "VI. THE TRIAL COURT ERRED WHEN IT GRANTED MOYER JUDGMENT ON UNITED BANK'S REQUEST FOR PUNITIVE DAMAGES ASSOCIATED WITH ITS CONVERSION AND FRAUDULENT TRANSFER CLAIMS."

{¶18} Preliminarily, we note this case comes to us on the accelerated calendar. App.R. 11.1, which governs accelerated calendar cases, provides in pertinent part the following:

> **(E) Determination and judgment on appeal**
>
> The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form.
>
> The decision may be by judgment entry in which case it will not be published in any form.

{¶19} One of the important purposes of the accelerated calendar is to enable an appellate court to render a brief and conclusory decision more quickly than in a case on the regular calendar where the briefs, facts, and legal issues are more complicated. *Crawford v. Eastland Shopping Mall Association,* 11 Ohio App.3d 158 (10th Dist.1983).

{¶20} This appeal shall be considered in accordance with the aforementioned rules.

I, II

{¶21} Because United Bank's first two assignments of error challenge the propriety of the trial court's grant of summary judgment in favor of Sutton, we shall address said assignments of error together.  In its first assignment of error, Unite Bank

contends the trial court erred in granting summary judgment in favor of Sutton Bank on the declaratory judgment claim. In its second assignment of error, United Bank maintains the trial court erred in granting summary judgment in favor of Sutton Bank as genuine issues of material fact exist.

{¶22} Civ. R. 56states in pertinent part:

{¶23} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

{¶24} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.,* 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning–Ferris Inds. of Ohio, Inc.,* 15 Ohio St.3d 321, 474

N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.,* 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist.1999).

**{¶25}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000–Ohio–186, 738 N.E.2d 1243.

**{¶26}** The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle,* 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist.1991).

**{¶27}** United Bank argues Moyer did not have authority to sign the Sutton Bank Loan for Expressway and lacked authority to grant a security interest in Expressway's inventory to Sutton Bank.  United Bank posits Sutton Bank's financial statement is ineffective to perfect its security interest; therefore, the United Bank Loan is first in priority.  We disagree.

**{¶28}** It is well established  an unauthorized contract entered into by a corporate officer or agent may be impliedly ratified by the governing officers or owners where the governing officers have actual knowledge of the facts and (1) accept and retain the benefits of the contract, (2) acquiesce in it, or (3) fail to repudiate the contract within a reasonable period of time." *Campbell v. Hospitality Motor Inns, Inc.* (1986), 24 Ohio St.3d 54, 57. Further, it is a well-settled doctrine of the law of agency is that a principal may ratify the acts of its agent performed beyond the agent's scope of authority, and such ratification relates back to the time of performance of the acts and binds the principal from that time. *State v. Wagner* (1990), 55 Ohio St.3d 31, 65.

**{¶29}** We find Expressway ratified the Sutton Bank Loan.  The record reveals Moyer played an active role in the operations of Expressway from the company's beginning.  Although Moyer did not have actual authority, the evidence establishes he had apparent authority to act on behalf of Expressway.  Expressway reported the $630,000 loan from Sutton Bank as a liability of the business on its federal tax returns, beginning in the 2006 tax year.  Expressway made the monthly loan payments of $5,415.66 to Sutton Bank throughout the eight years of the loan.  There is no evidence Expressway ever questioned the validity of the Sutton Bank Loan as a business indebtedness.  Moyer granted the security interest in Expressway's equipment and inventory in December, 2006.  Although Sutton Bank did not file the financing statement until May 7, 2007, Expressway's ratification relates back to December, 2006.  United Bank did not file its financing statement with the Secretary of State until November, 2007.  Accordingly, we find the trial court did not err in granting summary judgment in favor of Sutton Bank.

**{¶30}** United Bank also argues Sutton Bank did not provide value or consideration to Expressway. Sutton Bank maintains United Bank waived this argument by failing to raise the defense in its Answer to Sutton Bank's counterclaim. Assuming, arguendo, United Bank did not waive this defense, we, nonetheless, find Sutton Bank provided a value to Expressway. In his cross-claim against Expressway, Moyer alleged he signed the Note and Security Agreement for the Sutton Bank Loan "for the benefit of Expressway". Expressway admitted this allegation was true.

**{¶31}** United Bank's first and second assignments of error are overruled.

III

**{¶32}** In its third assignment of error, United Bank asserts the trial court erred in finding Moyer was not liable for conversion.

**{¶33}** The tort of conversion is defined as "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Heflin v. Ossman,* Fairfield App .No. 05CA17, 2005–Ohio–6876, ¶ 20, quoting *Joyce v. General Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172. Thus, the elements required for conversion are: (1) a defendant's exercise of dominion or control; (2) over a plaintiff's property; and (3) in a manner inconsistent with the plaintiff's rights of ownership. *Id.,* citing *Cozmyk Ent., Inc. v. Hoy* (June 30, 1997), Franklin App. No. 96APE10–1380.

**{¶34}** Generally, "[i]n order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. The measure of damages in a

conversion action is the value of the converted property at the time it was converted." *Congress Lake Club v. Witte,* Stark App.No.2007CA00191, 2008–Ohio–6799, ¶ 66, quoting *Tabar v. Charlie's Towing Serv., Inc.* (1994), 97 Ohio App.3d 423, 427–428, 646 N.E.2d 1132 (additional citations omitted). However, "Ohio law recognizes two types of conversion. The first type is where the wrongful possessor properly acquires the property but then refuses to return it upon demand and the second is where the wrongful possessor simply unlawfully acquires the property." *In re Panel Town of Dayton, Inc.* (S.D.Ohio 2006), 338 B.R. 764, 774, citing *Petefish v. Haselberger,* Ashland App.No.2005–COA–012, 2005–Ohio–5638. Thus, the aforesaid demand and refusal elements are conditional, and are necessary "if the original taking was rightful and no act of dominion or control inconsistent with the [owner's] ownership had taken place." See *Ohio Telephone Equipment & Sales, Inc. v. Hadler Realty Co.* (1985), 24 Ohio App.3d 91, 93.

**{¶35}** Upon review of the record, we find United Bank failed to establish the elements of conversion.  United Bank failed to trace funds in Expressway's bank accounts back to any specific secured property; therefore, was unable to establish any identifiable proceeds from the sale of its secured collateral were used to make payments to Moyer.  Accordingly, we find the trial court did not err in finding Moyer not liable for conversion.

**{¶36}** United Bank's third assignment of error is overruled.

IV

**{¶37}** In its fourth assignment of error, United Bank argues the trial court erred in failing to find certain payments by Expressway were fraudulent transfers when United Bank proved Expressway was insolvent.

**{¶38}** R.C. 1336.04(A) presents two separate definitions of a fraudulent transfer. The statutory elements of a fraudulent transfer under R.C. 1336.04(A)(1) include " '(1) a conveyance or incurring of a debt; (2) made with actual intent to defraud, hinder, or delay; (3) present or future creditors.' " *UAP-Columbus JV326132 v. Young,* 10th Dist. No. 09AP-646, 2010-Ohio-485, 2010 WL 532443, ¶ 28, quoting *Atlantic Veneer Corp. v. Robbins,* 4th Dist. No. 01CA678, 2002-Ohio-5363, ¶ 13. By contrast, a claim under R.C. 1336.04(A)(2) requires that (1) the debtor made a transfer without receiving equivalent value and (2) the debtor either was engaged or was about to engage in a business or a transaction "for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," or the debtor "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." *Esteco, Inc. v. Kimpel,* 7th Dist. No. 07 CO 3, 2007-Ohio-7201, ¶ 20.

**{¶39}** R.C. 1336.05 governs fraudulent transfers as to creditorswhose claims arose before a transfer was made, and provides:

(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation

and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(B) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor or the obligation was incurred if the transfer was made to or the obligation was incurred with respect to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

{¶40} United Bank asserts it established Expressway was insolvent; the transfers were not made for reasonably equivalent value; and the transfers were made to an insider.

{¶41} The trial court found United Bank failed to prove Expressway's insolvency. The trial court further found United Bank failed to establish payments made by Expressway to Sutton Bank and Moyer were made for the purpose of hindering, delaying, or defrauding United Bank. Upon review of the record, we find there was sufficient evidence to support the trial court's findings.

{¶42} United Bank's fourth assignment of error is overruled.

V

{¶43} In the fifth assignment of error, United Bank contends the trial court erred in granting judgment in favor of Moyer on its claim for collection of proceeds. Within this assignment of error, United Bank submits the trial court erred in finding it had failed to trace payments to Moyer.

{¶44} The record reveals although United Bank presented evidence of payments made by Expressway, United Bank failed to establish the monies paid by Expressway

were not legitimate business debts.    Further, United Bank was unable to trace identifiable proceeds from the sale of its specific collateral.

**{¶45}** United Bank's fifth assignment of error is overruled.

VI

**{¶46}** In its final assignment of error, United Banks maintains the trial court erred in failing to award punitive damages on its conversion and fraudulent transfer claims.

**{¶47}** Having found the trial court did not err in granting judgment in favor of Moyer on these claims, we, likewise, find the trial court did not err in failing to grant punitive damages to United Bank.

**{¶48}** United Bank's sixth assignment of error is overruled.

**{¶49}** The judgment of the Richland County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Wise, J.  and

Baldwin, J. concur