[Cite as *Woods v. Big Sky Energy, Inc.*, 2020-Ohio-5309.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DALE R. WOODS, ET AL., | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiffs - Appellees | : | Hon. W. Scott Gwin J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| BIG SKY ENERGY, INC., ET AL., | : | Case No. CT2020-0017 |
| | : | |
| Defendants - Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Muskingum County
                                 Court of Common Pleas, Case No.
                                 CH2016-1061

JUDGMENT:                        Affirmed in part; Reversed
                                 and Remanded in part

DATE OF JUDGMENT:                November 16, 2020

APPEARANCES:

For Plaintiffs-Appellees                 For Defendants-Appellants

W. EVAN PRICE, II                        GINO PULITO
Law Office of W. Evan Price II, LLC      Pulito and Associates, LLC
P.O. Box 20244                           230 Third Street
Columbus, Ohio 43220-0244                Elyria, Ohio 44035

*Baldwin, J.*

**{¶1}**   Defendants-appellants Big Sky Energy, Inc., Big Sky Petroleum, LLC and Robert Barr, in his individual capacity and dba Big Sky Petroleum, LLC appeal from the February 25, 2020 Judgment Entry of the  Muskingum County Court of Common Pleas.

STATEMENT OF THE FACTS AND CASE

**{¶2}**   The facts, as set forth in our Opinion in *Woods, et al. v. Big Sky Energy, et al,* 5th Dist. Muskingum No. CT2017-0031, 2019 -Ohio- 554, are as follows.

**{¶3}**   On May 22, 1968, appellees' predecessor in title, Russell and Marjorie Sandel, granted an oil and gas lease to Weaver Oil and Gas Corporation (hereinafter the "Weaver Lease"). The Weaver Lease had a primary term of ten years, and provided in paragraph seven as follows:

> If, after the expiration of the primary term of this lease, production on the leased premises shall cease, this lease shall not terminate, provided that Lessee commences operations for drilling, reworking, plugging back, or deepening a well within 60 days from such cessation, and this lease shall remain in force during the prosecution of such operations or additional drilling, reworking, plugging back, or deepening operations commenced while such operations are in progress or within 30 days after the cessation thereof, and if production results therefrom, then until it is marketed and so long as production continues.

**{¶4}**   The Weaver Lease was subsequently assigned several times, including an assignment to Dover Atwood Corporation. Dover Atwood Corporation assigned and sold

its interest in the Weaver Lease to appellant Barr on July 11, 2001, who used appellant Big Sky Energy to operate the well.

{¶5} Marjorie Sandel conveyed the property subject to the Weaver Lease to her daughter, Marlene Woods, in the 1990s. Robert Woods acquired the property from the estate of his wife, Marlene Woods, in 2008. Robert Woods conveyed the property to his son and his wife, appellees herein, on July 14, 2008.

{¶6} Subsequent to the transfer, appellee Dale Woods began trying to obtain production records from the well from appellants, who failed to produce records. After years of struggling to obtain information regarding the well and the Weaver Lease, appellees filed the instant action in the Muskingum County Common Pleas Court on May 11, 2016, including causes of action for quiet title, conversion, unjust enrichment, trespass, breach of contract, breach of implied covenant to reasonably develop, breach of implied covenant to explore further, and declaratory judgment.

{¶7} The case proceeded to bench trial. At trial, appellees elected not to proceed on the counts for breach of the Weaver Lease, and the implied covenants thereunder and the trial court dismissed these counts. The trespass claim also was dismissed.

{¶8} At trial, appellees presented evidence the well ceased production in December 2015, and had not resumed operations. Production ceased because the Ohio Department of Natural Resources (ODNR) refused to approve a bond from appellants' preferred insurance company. Appellants were ordered by ODNR to stop production on all wells until a replacement bond was posted. Appellant Barr admitted appellant Energy could have sought the requested bond from another insurer, but refused to do so as a matter of principle because Barr disagreed with ODNR's decision.

**{¶9}** The order from ODNR barring appellant Energy from operating under the former bond remained in litigation when trial commenced in the instant case. Appellant Barr further admitted failing to notify appellees production had ceased on the well.

**{¶10}** Appellants failed to produce the requested production records on the well until ordered to do so on March 7, 2017, during a status conference in the instant litigation on a motion to compel. The records demonstrated discrepancies between the amount of royalties paid and the amount of royalties due based on revenue generated from the well.

**{¶11}** Following trial, the trial court found appellants liable for conversion of royalties in the amount of $ 28,066.39. Because of appellants' attempts to conceal records which would demonstrate their failure to pay the full amount of royalties due appellees, the court found an award of punitive damages justified, and awarded punitive damages in the amount of $ 28,066.39. The court declared the Weaver Lease terminated by its terms for failure of production effective March 1, 2016, and quieted title in appellees as of March 1, 2016. The court dismissed all remaining causes of action set forth in the complaint.

**{¶12}** Appellants then appealed from the April 20, 2017 judgment of the court, raising the following assignments of error on appeal error:

**{¶13}** "I. THE TRIAL COURT ERRED AS A MATTER OF LAW AND FACT WHICH WAS UNSUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE BY TERMINATING THE WEAVER OIL AND GAS LEASE BASED UPON NONPRODUCTION WHEN THE LEASE INCLUDED A FORCE MAJEURE CLAUSE WHICH EXPRESSLY PROHIBITED SUCH TERMINATION."

**{¶14}** "II. THE TRIAL COURT ERRED AS A MATTER OF LAW AND FACT WHEN IT AWARDED COMPENSATORY DAMAGES IN THE AMOUNT OF $ 28,066.39 AND PUNITIVE DAMAGES IN THE AMOUNT OF $ 28,066.39."

**{¶15}** This Court, as memorialized in an Opinion filed on February 6, 2019, in *Woods, et al v. Big Sky Energy, et al*, 5th Dist. Muskingum No. CT2017-0031, 2019 - Ohio- 554*,* affirmed the judgment of the trial court in part and reversed and remanded in part as to damages only. This Court, in our Opinion, stated, in relevant part, as follows:

**{¶16}** "The measure of damages in a conversion action is the value of the converted property at the time it was *converted. United Bank, Div. of the Park Natl. Bank v. Expressway Auto Parts, Ltd., 5th Dist. No. 15CA51, 2015-Ohio-4554, 49 N.E.3d 776, ¶ 34; Congress Lake Club v. Witte, 5th Stark App. No. 2007CA00191, 2008-Ohio-6799, 2008 WL 5340219, ¶ 66.*

**{¶17}** "The trial court awarded compensatory damages for conversion in the amount of $ 28,066.39, and awarded punitive damages in the same amount. However, we cannot determine from the record how the trial court arrived at this figure for compensatory damages. The amount of compensatory damages appears to be derived from Appellees' Summary Exhibit No. 1, which shows the amount of lost revenue, not converted royalties, for the time period. In explaining this damage figure, counsel for Appellees stated in closing argument:

So what this does is, it goes back four years, to June of 2012, adds

up the oil revenue – gas revenue, the oil revenue, and then it subtracts out

the royalties that would have been paid on that – on the assumption that all

those royalties were indeed paid during that period. I don't think that is an

accurate statement, but again, for purposes of calculating the damages, that gives us 28,000...

THE COURT: Is the $ 20,000, $ 28,066.39, is that the exact amount? Is that the number you're going—

MR. PRICE: Yes. That is the first number. That's for the – the lost revenue. Tr. 239.

The trial court's damage award appears to be based on revenue from the well, rather than the correct measure of damages for conversion, which is the amount of royalties owed on that revenue converted by Appellants in this case. Appellees are not entitled to revenue from the well, but rather for the converted royalties only. We therefore remand this case to the trial court to determine damages in an amount not exceeding the royalties due pursuant to the lease, during the time period not barred by the statute of limitations for conversion, up to March 1, 2016 (the date the lease was terminated), less any royalties found actually paid pursuant to the lease for that time period. Because the court based its award of punitive damages on an incorrect measure of compensatory damages, the trial court must also adjust the punitive damage award according to the new calculation of damages."

*Id.* at paragraphs 20-23 (footnotes omitted). We and reversed in part as to damages [for conversion] only remanded for a "determination of damages , consistent with this opinion." *Id.* at paragraph 25.

**{¶18}** On remand, the parties filed briefs addressing the issue of damages. Pursuant to a Judgment Entry filed on February 25, 2020, the trial court again found that the Weaver Lease expired on or about March 1, 2016 due to lapse in production and held that the Woods' title to the property was quieted with respect to the Weaver Lease. The trial court entered judgment in favor of appellees and against appellants on the conversion claim in the amount of $28,066.39 for compensatory damages. The court also awarded appellees $28,066.39 for punitive damages and for all court costs and ordered that appellants were jointly and severally liable to appellees. The trial court also entered judgment in favor of appellees and against appellants on the unjust enrichment claim in the amount of $28,066.39 for compensatory damages and for all court costs. The trial court held that appellants were jointly and severally liable. The remaining counts were dismissed.

**{¶19}** Appellants now appeal from the trial court's February 25, 2020 Judgment Entry, raising the following assignments of error on appeal:

**{¶20}** "I. THE TRIAL COURT LACKED THE AUTHORITY TO REVERSE ITS OWN PRIOR JUDGMENT DISMISSING WOODS' CLAIM FOR UNJUST ENRICHMENT AND GRANTING WOODS' AN AWARD OF DAMAGES WHILE ON REMAND FROM THE APPELLATE COURT."

**{¶21}** "II. THE TRIAL COURT'S CALCULATION OF DAMAGES WAS UNSUPPORTED BY THE EVIDENCE AND CONTRARY TO THIS COURT'S PRIOR DECISION AND EXPLICIT INSTRUCTIONS."

**{¶22}** "III. THE TRIAL COURT WAS BARRED FROM ORDERING APPELLANT ROBERT BARR, INDIVIDUALLY, TO PAY ANY DAMAGES AS A RESULT OF HIS

PERSONAL BANKRUPTCY PURSUANT TO CHAPTER 7 OF TITLE 11 OF THE UNITED STATES CODE."

I

**{¶23}** Appellants, in their first assignment of error, argue that the trial court, on remand, had no authority to award damages to appellees on their unjust enrichment claim. We agree.

**{¶24}** The law of the case "doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). "This is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Id.* The doctrine prevents lower courts from disregarding the mandate of a superior court in a prior appeal in the same case" *Id.* Likewise, it prohibits litigants from "mak[ing] new arguments to the trial court on remand that were raised or could have been raised on the first appeal." *Neiswinter v. Nationwide Mut. Fire Ins. Co.*, 9th Dist. Summit No. 23648, 2008–Ohio–37 at paragraph 10; *Johnson v. Johnson*, 5th Dist. Stark No. 2016CA00060, 2016–Ohio–7861 at paragraph 14. Furthermore, "[a] trial court is without authority to extend or vary the mandate given by the appellate court." *Scott v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 14AP-105, 2014-Ohio-2796, ¶ 12, citing *State v. Harper,* 10th Dist. No. 06AP–733, 2007–Ohio–2590, ¶ 13.

{¶25} In the case sub judice, the trial court, in its April 20, 2017 Judgment Entry, dismissed the unjust enrichment claim (Count III) holding that "Woods failed to establish that Defendants were unjustly enriched and any damages would be duplicative of the amount awarded on their conversion claim." Appellants then appealed from such Judgment Entry and this Court, as is stated above, affirmed in part, but reversed and remanded in limited part, and remanded for a "determination of damages, consistent with this opinion." The trial court, on remand, awarded damages for unjust enrichment.

{¶26} As noted by appellants, "[t]he issue of whether Woods proved their claim for unjust enrichment was settled by the time the case returned to the trial court on remand." Pursuant to *Nolan*, *supra.*, the law of the case doctrine prevented the trial court from reversing its own prior judgment dismissing the unjust enrichment claim and from revisiting the issue of damages for unjust enrichment on remand.

{¶27} Appellants' first assignment of error is, therefore, sustained.

II

{¶28} Appellants, in their second assignment of error, contend that the trial court's award of damages was unsupported by the evidence and contrary to this Court's prior decision and explicit instructions. We agree.

{¶29} "Because the award of damages is a discretionary matter, we will not reverse a trial court's decision regarding its determination of damages absent a showing that the trial court abused its discretion." *Reinbolt v. Kern*, 183 Ohio App.3d 287, 2009-Ohio-3492, 916 N.E.2d 1100, ¶ 38 (6th Dist.) citing *Roberts v. United States Fid. & Guar. Co.*, 75 Ohio St.3d 630, 364, 665 N.E.2d 664 (1996). "An abuse of discretion occurs only

if the court renders an unreasonable, arbitrary, or unconscionable judgment." *Id.,* citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶30}** As is stated above, this Court, in our February 6, 2019 Opinion in *Woods v. Big Sky Energy, et al*, 5th Dist. Muskingum No. CT2017-0031, 2019 -Ohio- 554*,* stated, in relevant part, as follows:

> The trial court's damage award appears to be based on revenue from the well, rather than the correct measure of damages for conversion, which is the amount of royalties owed on that revenue converted by Appellants in this case. Appellees are not entitled to revenue from the well, but rather for the converted royalties only. We therefore remand this case to the trial court to determine damages in an amount not exceeding the royalties due pursuant to the lease, during the time period not barred by the statute of limitations for conversion, up to March 1, 2016 (the date the lease was terminated), less any royalties found actually paid pursuant to the lease for that time period. Because the court based its award of punitive damages on an incorrect measure of compensatory damages, the trial court must also adjust the punitive damage award according to the new calculation of damages.

> *Id*. at paragraph 23.

**{¶31}** On remand, the trial court awarded appellees $28,066.39 in compensatory damages and $28,066.39 in punitive damages for conversion. Such figure represented the net revenue and not the converted royalties. We find that the trial court failed to follow the mandate of this Court in determining and ordering damages. As noted by appellants,

pursuant to this Court's prior Opinion, "the trial court was limited to awarding damages equal to converted royalties, not net revenue." Appellants are entitled to "damages in an amount not exceeding the royalties due pursuant to the lease, during the time period not barred by the statute of limitations for conversion, up to March 1, 2016 ( the date that the lease was terminated), less any royalties found actually paid pursuant to the lease for that time period." Id at paragraph 23.[1]

**{¶32}** Appellants' second assignment of error is, therefore, sustained.

III

**{¶33}** Appellants, in their third assignment of error, maintain that the trial court was barred from ordering appellant Robert Barr, individually, to pay any damages as a result of his personal bankruptcy. We disagree.

**{¶34}** Appellant Robert Barr filed a Chapter 7 personal bankruptcy in the United States District Court for the Southern District of Ohio on or about December 15, 2017. At the time, the first appeal in this case was pending. This Court, upon being notified of the bankruptcy, closed the case due to the bankruptcy stay. Appellant Barr received his discharge on May 16, 2018. Upon notice of the conclusion of the bankruptcy, this Court, on appellants' request, set the matter for oral argument on January 17, 2019.

**{¶35}** After the bankruptcy stay was lifted, appellant Barr never sought dismissal of the personal judgment against him, never sought to amend his answer on remand to assert bankruptcy as an affirmative defense pursuant to Civ.R. 8(C) and never sought a ruling on whether it applied to the damages awarded in this case. We agree with appellees that there is no record for this Court to examine.

---

[1] We note that pursuant to R.C. 2315.21(D), any award of punitive damages is limited to two times the amount of compensatory damages.

**{¶36}** We further note that the trial court, as memorialized in a Judgment Entry filed on October 1, 2018, held that a garnishment hearing would go forward because "Defendant failed to provide evidence that this debt was discharged in bankruptcy." We concur.

**{¶37}** Appellants' third assignment of error is, therefore, overruled.

**{¶38}** Accordingly, the judgment of the Muskingum County Court of Common Pleas is affirmed in part and reversed and remanded in part for a determination of damages for conversion, consistent with this Opinion.

By: Baldwin, J.

Hoffman, P.J. and

Gwin, J. concur.