ROBERTS, TRUSTEE IN BANKRUPTCY FOR WIKEL MANUFACTURING COMPANY, INC., APPELLANT AND CROSS-APPELLEE, *v.* UNITED STATES FIDELITY & GUARANTY COMPANY, APPELLEE AND CROSS-APPELLANT.

[Cite as *Roberts v. United States Fid. & Guar. Co.* (1996), 75 Ohio St.3d 630.]

(No. 94–2511—Submitted February 6, 1996—Decided June 26, 1996.)

632

*Murray & Murray Co., L.P.A., Dennis E. Murray* and *Kirk J. Delli Bovi,* for appellant and cross-appellee.

*Spengler Nathanson, James R. Jeffery, Teresa L. Grigsby* and *James D. Jensen,* for appellee and cross-appellant.

FRANCIS E. SWEENEY, SR., J. This court must determine whether the trial court properly made the following findings: (1) that USF&G did not act in bad faith in breaching the duty to defend Wikel; (2) that USF&G was entitled to a setoff; and (3) that Wikel was entitled to only $1.5 million in damages for USF&G's breach of its duty to defend. For the following reasons, we uphold the trial court's determination that USF&G did not act in bad faith and, thus, we reverse that portion of the court of appeals' judgment remanding this issue to the trial court for reconsideration. We reverse the court of appeals' allowance of a setoff of damages. Finally, we affirm the court of appeals' determination that Wikel is entitled to only $1.5 million in damages. Accordingly, we affirm the judgment of the court of appeals in part and reverse it in part.

Appellant, Wikel's trustee in bankruptcy, argues that we should remand this cause to the trial court for application of this court's holding in *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus. While *Zoppo* involved an insurer's bad faith failure to process a claim, appellant argues that it should be extended to apply to cases involving bad faith failure to defend. In *Zoppo*, we held, at paragraph one of the syllabus, that "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." In *Zoppo* we abandoned the intent requirement of *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 590 N.E.2d 1228. We decline to extend *Zoppo* to this particular case of bad faith failure to defend, as *Zoppo* was decided after the trial court's and court of appeals' decisions in this case. This case has been litigated for over ten years and should come to final resolution before this court.[1]

The trial court found that USF&G did not act in bad faith, applying the intent requirement of *Said, supra*. In support of this finding, the trial court cited the definition of "bad faith" set forth in *Said*, which included the requirement that in order to demonstrate bad faith, "wrongful intent" must be proven. The court noted that "[i]t is not enough that the insurance company exercised poor judgment or even that it acted recklessly." While the trial court's entry erroneously included language setting forth the standard for an award of punitive damages in bad faith claims, we find that the inclusion of this language was harmless here, as the entry indicates that this was merely an additional reason for finding no bad faith. Thus, regardless of the inclusion of this erroneous language, we believe that the trial court found no bad faith under the properly cited definition articulated in *Said, supra*. In fact, the trial court concluded that

---

1. While we decline to extend *Zoppo* to this particular case of bad faith failure to defend, we leave it open as to whether *Zoppo* may be applied to future cases.

it found no bad faith "under the standards articulated by the Ohio Supreme Court." Accordingly, we find it unnecessary to remand this matter to the trial court for reconsideration of this finding.

We must next address whether USF&G was entitled to a setoff in the amount of $1 million by virtue of Wikel's settlement in that amount with Wikel's own counsel. A setoff was improper here, as Wikel's professional negligence claim against its own counsel was separate and distinct from Wikel's breach of contract claim against USF&G. The attorney-client relationship between Wikel and its separate counsel arose out of a particular contract. The insured-insurer relationship between Wikel and USF&G arose out of a completely separate and distinct contract. The insurer, USF&G, and Wikel's separate counsel had no relationship with each other and no determination was ever made that Wikel's separate counsel in the Miller action bore any responsibility for the damages which the trial court awarded against USF&G in the instant case. Accordingly, we reverse the court of appeals' finding that the trial court properly allowed the setoff.

Appellant next argues that the trial court erred in awarding only $1.5 million in damages (the Miller judgment), as it demonstrated that the Miller judgment was the reason it had to eventually seek bankruptcy protection, which led to the demise of the business and an $8,206,099 economic loss to the company. We will not disturb a decision of the trial court as to a determination of damages absent an abuse of discretion. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. While the trial court did not state its reason for allowing $1.5 million as compensatory damages, we agree with the court of appeals that the trial court must have found that these additional debts (or losses) were remote, speculative, and not supported by the evidence. The appellate court found that Wikel was entitled to recover only those damages which could reasonably be considered as arising naturally from USF&G's breach of the duty to defend. The appellate court then affirmed the trial court's damages, concluding that "the trial court's finding that the actual damages sustained by Wikel as a direct result of USF&G's contractual breach of its duty to defend Wikel was $1.5 million is supported by the evidence." We agree with both lower courts that the alleged $8.2 million loss could not have been seen to arise from the $1.5 million judgment against Wikel.[2] Accordingly, we affirm the court of appeals' finding that the trial court's determination of damages was not against the manifest weight of the evidence.

*Judgment affirmed in part*
*and reversed in part.*

---

2. Wikel's amended complaint prayed for $7 million in damages and, thus, the most it would have been entitled to is that amount of damages.

MOYER, C.J., DOUGLAS and GRADY, JJ., concur.

PFEIFER, J., concurring in part and dissenting in part. I concur but would allow a setoff of the amount of the Ebert settlement and therefore agree in part with Justice Cook's dissenting opinion.

PETREE and COOK, JJ., dissent.

CHARLES R. PETREE, J., of the Tenth Appellate District, sitting for WRIGHT, J.

THOMAS J. GRADY, J., of the Second Appellate District, sitting for RESNICK, J.

COOK, J., dissenting. I concur with the decision of the majority upholding the trial court's decision that the plaintiff did not prove the tort of bad faith. I would, however, reverse the court of appeals' decision on the claim for breach of the contract to defend, as I believe that there simply is no causal connection between Wikel's damages, that is, the Miller judgment, and USF&G's alleged breach of the duty to defend.

This case does not involve coverage issues. Instead, the only legal basis for attaching liability to USF&G for the Miller judgment is through a theory of a breach of the duty to defend. Wikel concedes in its reply brief that a breach of the duty to defend may not create coverage where none otherwise exists. Thus, without a right to coverage, the only way USF&G can be liable to pay the amount of the judgment is if it is determined that USF&G breached a duty to defend and that breach proximately caused the judgment to be rendered against the insured.

Yet, the coverage issue is important, as it triggered the insured's option to retain personal counsel and control the defense. USF&G, although having agreed to provide a defense under a reservation of rights, did not defend the case. The reservation of rights letters introduced at trial put Wikel on notice of the potential that it might have direct exposure on the Miller complaint. That Wikel understood this potential is evident from its initial and continued retention of Ebert to act as defense counsel. Ebert, as Wikel's own attorney, took the case to trial, apparently with no objection from Wikel. It was the legal strategy of Ebert that ultimately caused the judgment in favor of the Millers. And it is Ebert's malpractice, for which Wikel received a $1 million settlement, not the breach of the duty to defend by USF&G, that resulted in the damages Wikel now seeks to pass on to USF&G.

The wrongdoing by USF&G, according to the facts evinced at trial, was that it assigned an attorney to the defense of the Miller claim and never formally revoked that assignment. Yet, counsel is presumed competent and Wikel was represented in this claim by competent counsel of its choosing. Maybe Wikel could have claimed against USF&G for the cost of its defense. But it cannot reasonably claim as damages the amount of the Miller judgment by saying that

the judgment directly and proximately flowed from the fact that *particular counsel*, USF&G's assigned counsel, did not defend the case.

For the foregoing reasons, I would reverse the judgment that Wikel's damages in the amount of $1,500,000 directly resulted from breach of USF&G's duty to defend. Moreover, even assuming *arguendo* that the judgment amount could be attributed to the breach of the duty to defend, I would agree with the court of appeals that the amount of the Ebert settlement should be set off from the judgment rendered against USF&G for the same injury.

PETREE, J., concurs in the foregoing dissenting opinion.