[Cite as *Adams v. 1365 E. Blvd. Corp.*, 2016-Ohio-8487.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 104089 and 104126**

# BERNARD ADAMS

PLAINTIFF-APPELLANT

vs.

# 1365 EAST BOULEVARD CORPORATION

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-835330

**BEFORE:** E.T. Gallagher, P.J., Laster Mays, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** December 29, 2016

**ATTORNEY FOR APPELLANT**

Myron P. Watson
614 West Superior Avenue
1144 Rockefeller Building
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE**

Nancy C. Schuster
Schuster & Simmons Co.
2913 Clinton Avenue
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, P.J.:

**{¶1}** Plaintiff-appellant, Bernard Adams ("Adams"), appeals from the judgment of the trial court awarding offsetting damages to Adams and defendant-appellee,[1] 1365 East Boulevard Corporation (the "Cooperative"), in the amount of $26,021. Adams raises the following assignments of error for our review:

> 1. The trial court erred and abused its discretion in failing to award the plaintiff reimbursement for the monies paid for the repair and maintenance of the building, which was against the manifest weight of the evidence.
>
> 2. The trial court erred and abused its discretion when it failed to grant the plaintiff an award or reimbursement for attorney fees, and this ruling was against the manifest weight of the evidence.
>
> 3. The trial court erred and abused its discretion when it found that maintenance costs were owed on unit one when the damages to the unit were structural and not solely attributable to damages inside the apartment unit, and such finding was against the manifest weight of the evidence.
>
> 4. The trial court erred and abused its discretion when it found that the plaintiff should not be reimbursed for monies paid for the repairs and maintenance of the garage, and such finding was against the manifest weight of the evidence.

**{¶2}** After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I.   Procedural and Factual History

---

[1]   On February 16, 2016, the Cooperative filed a notice of cross-appeal but failed to file any conforming briefs or arguments. Accordingly, we decline to treat the Cooperative as a cross-appellant.

**{¶3}** In February 1949, the Cooperative was organized for the purpose of "purchasing, owning, managing, and residing in" a six-unit cooperative apartment building located on East Boulevard in Cleveland, Ohio. Pursuant to the terms of a mutual agreement (the "Cooperative" or "Cooperative Agreement"), unit owners in the apartment building have an equal share in the Cooperative, have equal responsibilities, pay equal maintenance fees and assessments, and are required to act in the best interest of the Cooperative. Relevant to this appeal, paragraph four of the Cooperative Agreement states, in pertinent part:

> **{¶4}** The following expenses shall be borne on a pro rata basis:
>
> All outside repairs, including painting, roofing, gutters, down-spouts, outside carpentry, masonry, plumbing, electrical wiring, up-keep of garage, main sewer, screens and storm windows and awnings * * *.
>
> * * *
>
> [A]ll inside repairs, decorations, structural changes within the individual suites shall be the personal liability of the owners and occupants thereof.

**{¶5}** Adams is a shareholder of the Cooperative and owns units one and six in the apartment building. In November 2014, Adams sought a temporary restraining order and preliminary injunction to prevent the Cooperative from demolishing an unattached garage located on the property. Adams further filed a complaint against the Cooperative, alleging causes of action for negligence, unjust enrichment, and intentional infliction of emotional distress.

{¶6} Following several hearings, the trial court denied Adams's request for a preliminary injunction and permitted the Cooperative to proceed with the demolition of the garage as scheduled.

{¶7} In December 2014, the Cooperative filed an answer and counterclaims against Adams for unpaid maintenance fees and assessments. In addition, the Cooperative sought damages for Adams's share of the fees associated with the demolition of the garage. In December 2015, the matter proceeded to a bench trial, where the following facts were adduced.

{¶8} Darryl Green testified that in 2013, he was contracted by Adams to restore Adams's one-third portion of the garage for $11,500. Green testified that he obtained all necessary permits and repaired the garage in compliance with his contract with Adams. Green admitted that he was not aware the Cooperative owned the apartment building at the time he repaired the garage.

{¶9} Adams testified that he has been residing in unit six of the apartment building since 2005. In February 2008, Adams entered into a purchase agreement with the Cooperative to acquire unit one from a former tenant who had been delinquent in paying maintenance fees and utility bills for the building. Pursuant to the terms of the purchase agreement, Adams acquired unit one in exchange for his promise to pay an outstanding gas bill in the amount of $31,750 on behalf of the Cooperative. Adams testified that he spent an additional $5,000 in attorney fees to evict the former tenant of unit one, who refused to vacate the apartment building. Adams testified that "it was his understanding"

that the Cooperative would reimburse him for all legal fees spent during the eviction proceedings.

{¶10} Upon acquiring unit one, Adams found the unit to be "uninhabitable," requiring substantial structural repairs to the interior of the unit and exterior of the apartment building. Adams opined that the damage to unit one was caused by the Cooperative's failure to maintain the unit in compliance with the Cooperative Agreement. Thus, Adams testified that the Cooperative was required to reimburse him for the cost of repairing the unit.

{¶11} With respect to the garage, the record reflects that the garage was made to house up to six vehicles, apportioned into three spaces capable of holding two vehicles each. It was a brick construction and, at the time of the restraining order proceedings, a condemnation order was pending from the city of Cleveland. Adams testified that he spent approximately $20,000 repairing his one-third portion of the garage. In addition, Adams alleged that he is owed $9,551.54 to reflect the parking fees and storage costs associated with no longer having two parking spaces in the garage.

{¶12} In total, Adams alleged that he is owed damages in the amount of $112,095.86 for the costs incurred in repairing the apartment building and garage. (Plaintiff's exhibit No. 32.)

{¶13} On behalf of the Cooperative, Sheba Marcus-Bey testified that she is a unit owner in the apartment building and is the current president of the Cooperative. Regarding the garage located on the property, Marcus-Bey testified that the Cooperative

was facing serious problems with insurance coverage for the apartment building as a result of the dilapidated condition of the garage. Without either complete repair or demolition of the garage structure, insurance companies were unwilling to provide coverage for the entire property. In May 2012, the members of the Cooperative reached a majority decision, over Adams's objection, to demolish the garage rather than repair the structural damage. Despite the vote, however, Adams obtained a permit to make the repairs without the authorization or approval of the Cooperative.

{¶14} With respect to Adams's acquisition of unit one, Marcus-Bey testified that the Cooperative's purchase agreement with Adams did not contain a provision requiring the Cooperative to fix existing damages in the unit. Marcus-Bey stated, "it's very clear in the bylaws that everybody who owns a shared interest, they're responsible for making their own improvements to their own units." Moreover, Marcus-Bey testified that she believed the intent of the purchase agreement was to transfer the unit to Adams in an "as is" condition.

{¶15} Regarding the Cooperative's counterclaims, Marcus-Bey testified that each unit owner is obligated to make monthly maintenance fee payments to cover the costs of "assessments for work and capital improvements on the facility." Marcus-Bey estimated that Adams owes the Cooperative approximately $34,000 for unpaid maintenance fees and assessments for units one and six.

{¶16} Olivia Martin testified that she resides in the apartment building and serves as the Cooperative's treasurer. Martin testified that in order for a member of the

Cooperative to be reimbursed for an expenditure, he or she is required to submit a bill before payment from Cooperative funds will be made. Martin testified that although Adams had submitted bills for reimbursement on "two or three" occasions in the past, she did not receive submission of expenditures from Adams for the alleged repairs made in this case. Martin further stated that decisions regarding repairs to the building typically required a majority vote.

{¶17} At the conclusion of trial, the court issued a decision, awarding offsetting damages to Adams and the Cooperative in the amount of $26,021. With respect to Adams's claim for reimbursement for repairs to the garage, the court found that Adams "acted at his own peril and as a result is not due any reimbursement for the sums expended in the repair and restoration of his one-third portion of the garage." In addition, the trial court declined to award Adams damages for the repairs to the interior of units one and six. However, the court awarded Adams damages in the amount of $26,021 to reimburse him for certain repairs made to the building that were "beneficial to all members of the Cooperative."

{¶18} Finally, the court awarded the Cooperative damages in the amount of $26,021 for Adams's unpaid maintenance fees and assessments for unit one, as "a complete offset and equal to the amount owed to plaintiff."

{¶19} Adams now appeals from the trial court's judgment.

## II. Law and Analysis

### A. Manifest Weight of the Evidence

**{¶20}** Collectively, Adams argues in his first, second, third, and fourth assignments of error that the trial court's judgment was against the manifest weight of the evidence. Specifically, Adams contends the trial court erred and abused its discretion by failing to award him damages in the amount of $112,095.86 for attorney fees and the costs associated with the repair and maintenance of the apartment building and garage. Adams further argues the trial court erred in awarding the Cooperative offsetting damages for past maintenance fees and assessments.

**{¶21}** For the purposes of judicial clarity, we address Adams's assignments of error out of order.

## B. Standard of Review

**{¶22}** When reviewing a civil appeal from a bench trial, we apply a manifest weight standard of review. *Revilo Tyluka, L.L.C. v. Simon Roofing & Sheet Metal Corp.*, 193 Ohio App.3d 535, 2011-Ohio-1922, 952 N.E.2d 1181, ¶ 5 (8th Dist.), citing App.R. 12(C) and *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). A verdict supported by some competent, credible evidence going to all the essential elements of the case must not be reversed as being against the manifest weight of the evidence. *Domaradzki v. Sliwinski*, 8th Dist. Cuyahoga No. 94975, 2011-Ohio-2259, ¶ 6; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶23}** As the Ohio Supreme Court explained in *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517:

"Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [trier of fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'"

*Id.* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). In assessing whether a verdict is against the manifest weight of the evidence, we examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the verdict must be overturned and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶24} In weighing the evidence, we are guided by a presumption that the findings of the trier of fact are correct. *Seasons Coal* at 80. This presumption arises because the trier of fact had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* Thus, "to the extent that the evidence is susceptible to more than one interpretation," we will "construe it consistently with the * * * verdict." *Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, ¶ 22 (8th Dist.), citing *Ross v. Ross*, 64 Ohio St.2d 203, 414 N.E.2d 426 (1980); *see also Seasons Coal* at 80, fn. 3 ("'[I]n determining whether the judgment below is manifestly against the

weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"), quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

## C. Attorney Fees

{¶25} In his second assignment of error, Adams argues the trial court erred and abused its discretion by failing to award him damages in the amount of $5,000 for attorney fees paid to evict the former tenant of unit one. Adams contends that the eviction proceeding was initiated for the benefit of the Cooperative and, therefore, the Cooperative was obligated to share in the cost of attorney fees.

{¶26} In finding that Adams was not entitled to the reimbursement of attorney fees, the trial court stated, in pertinent part

> [T]he attorney's fees for the eviction from the unit are the responsibility of the unit owner, not [the Cooperative] and the Court is somewhat concerned about the amount of the fees claimed for a simple eviction proceeding.

{¶27} After due consideration, we are unable to conclude that the court's decision to deny the requested attorney fees was against the manifest weight of the evidence. Although Adams submitted a letter from his attorney reflecting that a claim for forcible entry and detainer had been filed on his behalf, Adams failed to submit documentary evidence, beyond his own self-serving calculations, to support the requested

reimbursement of $5,000. Moreover, under the circumstances presented in this case, we agree with the trial court that the attorney fees associated with Adams's purchase and acquisition of unit one was the responsibility of Adams as the unit owner. Adams has failed to identify a provision from the Cooperative Agreement or purchase agreement to suggest otherwise.

{¶28} Adams's second assignment of error is overruled.

### D. Maintenance Fees

{¶29} In his third assignment of error, Adams argues "the trial court erred and abused its discretion by finding that maintenance fees on unit one were owed when the damages to the unit were structural and solely attributable to the Cooperative's failure to maintain the building."

{¶30} In its decision, the trial court found there was insufficient evidence presented at trial to conclusively determine whether Adams owed past maintenance fees for unit six. Regarding unit one, however, the court determined that Adams has not paid maintenance fees or assessments since he obtained possession of the unit in 2010. Thus, the court found that Adams had an outstanding balance of $28,800 for unpaid maintenance fees and assessments for unit one. Ultimately, however, the court reduced the amount due to $26,021, "[d]ue to the lack of detailed information with regard to the maintenance fees, the assessments, and some of the issues surrounding the repairs."

{¶31} In challenging the court's award of outstanding maintenance fees, Adams concedes that he has not made a maintenance fee payment for unit one since acquiring the

unit. However, Adams appears to argue that he was not obligated to pay maintenance fees for unit one where there was no indication that the Cooperative was willing to apply those fees to correct the structural damage that existed in the unit.

{¶32} After careful consideration, we find no merit to Adams's position. Regardless of Adams's personal disapproval with the Cooperative's maintenance of unit one, we find nothing in the Cooperative Agreement to suggest Adams was excused from his obligation to pay monthly maintenance fees. Moreover, we find the trial court's judgment rectified, in large part, Adams's dissatisfaction with the Cooperative's alleged inaction by awarding him reimbursement damages in the amount of $26,021 for the repairs he made to the apartment building and unit one "that were made to the benefit of all unit owners."

{¶33} Accordingly, we find the trial court's decision requiring Adams to pay his outstanding maintenance fees for unit one was not against the manifest weight of the evidence. Adams's third assignment of error is overruled.

### E. Maintenance and Repair of the Garage

{¶34} In his fourth assignment of error, Adams argues the trial court erred and abused its discretion by failing to reimburse him for the cost of repairing his one-third portion of the garage.

{¶35} At trial, Adams testified that he spent $20,436.72 repairing the structural damage to his one-third portion of the garage. In addition, Adams argued that he was entitled to reimbursement in the amount of $9,551.56 for parking fees and storage costs

incurred as a result of the demolition of the garage. In denying the requested damages, the trial court held that Adams failed to obtain authorization or approval from the Cooperative before making the repairs to the garage and, therefore, "acted at his own peril and as a result is not due any reimbursement for the sums expended in the repair and restoration of his one-third portion of the garage."

{¶36} On appeal, Adams argues he "had a right to make repairs to his portion of the garage to preserve the utility of his parking spaces in the garage" where the Cooperative "failed to act to repair the garage." Adams claims that he was entitled to "self-help." We disagree.

{¶37} After careful review, we find the trial court did not error in finding that Adams made repairs to the garage at his own peril. The testimony presented at trial established that in May 2012, the Cooperative reached a majority decision, over Adams's objection, to demolish the garage. Marcus-Bey explained that the decision to demolish the garage was made in order to correct an outstanding building code violation and to rectify issues concerning insurance coverage for the apartment building. Records of a shareholder meeting held in January 2013, reflect that Adams was aware of the Cooperative's plan to demolish the garage, yet "refused to remove his items from the garage" in order to obstruct and postpone the demolition.

{¶38} In our view, the foregoing evidence demonstrates that the Cooperative did not "fail to act" as Adams suggests. Rather, the record reflects that the Cooperative merely reached a majority decision that Adams did not approve of. Adams made the

subject repairs (1) with knowledge of the Cooperative's majority decision to demolish the structure, and (2) without approval or authorization from the Cooperative. Under these circumstances, Adams is not entitled to damages for the funds he expended repairing his portion of the garage.

{¶39} Moreover, Adams is not entitled to reimbursement for the alleged parking and storage costs associated with no longer having two parking spaces in the garage. Despite Adams's disapproval with the demolition of the garage, Marcus-Bey testified that each unit owner continues to have access to two parking spaces on the property. Thus, Adams has presented no evidence to suggest the Cooperative is responsible, or contractually bound, to pay for the costs associated with Adams's personal decision to park and store his vehicles in a private garage when adequate parking is available on the property.

{¶40} Based on the foregoing, the trial court's judgment denying Adams's requested damages relating to the repair and subsequent demolition of the garage was not against the manifest weight of the evidence.

{¶41} Adams's fourth assignment of error is overruled.

## F. Damages

{¶42} In his first assignment of error, Adams reiterates many of the arguments raised above and broadly asserts that the trial court's decision to limit his damages to $26,021 was against the manifest weight of the evidence. Adams contends that "even assuming the $112,095.86 was an inflated figure for all monies expended by Plaintiff, it

still would not only amount to the $26,021 figure that the Court believes off-set perfectly."

{¶43} A reviewing court will not reverse a decision of the trial court as to a determination of damages absent an abuse of discretion. *Sivit v. Village Green of Beachwood, L.P.*, 143 Ohio St.3d 168, 171, 2015-Ohio-1193, 35 N.E.3d 508 (2015), citing *Roberts v. United States Fid. & Guar. Co.*, 75 Ohio St.3d 630, 634, 665 N.E.2d 664 (1996). A court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶44} As stated, Adams sought damages in the amount of $112,095.86 for payments he allegedly made on behalf of the Cooperative. Plaintiff's exhibit No. 32 specifies the amount of each payment, the dates the payments were made, and provides a brief description of each completed repair.

{¶45} With respect to the repairs made to the garage, the exhibit reflects a total payment of $20,436.32. In addition, the exhibit states that Adams suffered damages in the amount of $7,200 in parking fees and $2,351.56 in storage costs following the demolition of the garage. With respect to repairs made to the property, the list reflects total payments of $62,771, including (1) $17,000 to repair the roof and down-spouts, (2) $8,791 for electrical repairs to unit one, (3) $230 for repairs to the front door, (4) $5,000 in attorney fees to evict the former tenant of unit one, and (5) a $31,750 gas bill payment to Dominion East Ohio Gas. Finally, the exhibit specifies that Adams made $28,888.14 in "routine maintenance payments." At trial, Adams testified that the $28,888.14

reflected the value of all maintenance fee payments he made for unit six.  *See* Plaintiff's exhibit No. 47.

{¶46} Based on our resolution of Adams's second, third, and fourth assignments of error, we find the trial court did not error in denying Adams's requested damages for (1) repairs made to the garage, (2) repairs made to the interiors of units one and six, (3) parking and storage fees, and (4) attorney fees.  In our view, Adams failed to present competent and credible evidence to support his entitlement to reimbursement of those expenditures.

{¶47} Moreover, we find no error in the court's judgment awarding Adams damages in the amount of $26,021 for the repairs he made for the benefit of the Cooperative, including (1) electrical work performed in unit one, (2) repairs to the front door, and (3) repairs to down-spouts and the roof.  As set forth in paragraph four of the Cooperative Agreement, such repairs benefitted the Cooperative and were to be shared equally by each unit owner.

{¶48} Thus, the only remaining damages delineated in Plaintiff's exhibit No. 32 relate to Adams's payment of an outstanding gas bill in the amount of $31,750, and his maintenance fee payments for unit six in the amount of $28,88.14.

{¶49} Beyond conclusory statements, Adams has failed to develop an argument or present a legal basis to support his position that he is entitled to reimbursement for the funds paid towards the Cooperative's outstanding gas bill or his maintenance fees for unit six.  Excusing the limited breadth of Adams's argument, we nevertheless find no

evidence in the record to suggest Adams is entitled to damages beyond the $26,021 awarded by the trial court.

{¶50} As set forth at trial and in the terms of the purchase agreement, Adams acquired an ownership interest in unit one in exchange for his promise to pay the Cooperative's outstanding gas bill. Thus, the requested damages in the amount of $31,750 represents unit one's purchase price. Adams continues to own and possess unit one and, therefore, is not entitled to reimbursement of the funds he spent acquiring an interest in the unit.

{¶51} Similarly, Adams is not entitled to reimbursement of his past maintenance fee payments for unit six in the amount of $28,888.14. Those payments were made pursuant to the terms of the Cooperative Agreement and were applied to the maintenance of the apartment building for the collective benefit of the Cooperative. Adams was not excluded from the obligations of each unit owner to make monthly maintenance fee payments. Accordingly, the trial court did not error in limiting Adams's damages to the value of the repairs made for the benefit of all unit owners in the amount of $26,021.

{¶52} Adams's first assignment of error is overruled.

### III. Conclusion

{¶53} The trial court's judgment awarding offsetting damages to Adams and the Cooperative was supported by competent and credible evidence. Accordingly, the court's judgment was not against the manifest weight of the evidence.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR